# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1892V
### Filed: April 24, 2019
UNPUBLISHED

| | |
|---|---|
| KERI ANNE BORDELON,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Processing Unit (SPU);<br>Damages Decision; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

**Dorsey**, Chief Special Master:

  On December 6, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act").  Petitioner alleges that she suffered a right shoulder injury as a result of her October 4, 2016 influenza ("flu") vaccination.  Petition at 1.  The case was assigned to the Special Processing Unit of the Office of Special Masters.  For the reasons discussed below, the undersigned now finds that petitioner is entitled to compensation in the amount of $75,000.00.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Procedural History

On November 2, 2018, respondent filed a Rule 4(c) Report in which he conceded that petitioner's injury constituted a Table injury of a shoulder injury related to vaccine administration ("SIRVA").  Subsequently, on November 6, 2018, a ruling on entitlement issued finding petitioner entitled to compensation for SIRVA.

After briefly attempting to resolve damages informally, petitioner advised on November 20, 2018, that the parties had agreed to resolve damages through written briefing.  The parties further confirmed on December 20, 2018, that they are not amenable to mediation of this case and that the damages at issue are limited to compensation for petitioner's pain and suffering.

In addition to allowing the parties the opportunity to file separate briefs setting forth their respective positions regarding the damages in this case, the undersigned also ordered the parties to file a comprehensive joint stipulation of facts including "a complete narrative of petitioner's relevant medical course as it relates specifically to damages, especially including any notions in the medical records addressing the nature, severity, and duration of petitioner's pain and any limitations in range of motions."[3]

On March 14, 2019, petitioner filed on behalf of the parties the required joint stipulation of facts.  On April 1, 2019, the parties filed their respective briefs. Accordingly, this case is now ripe for an award of damages.

## II.     Factual History

By way of factual recitation of petitioner's medical history, the parties' joint stipulation of facts is appended hereto and is incorporated by reference.  Additionally, however, the undersigned has reviewed the entire record and bases her decision on the record as a whole.  In addition to her medical records, petitioner also filed two sworn statements as well as affidavits by her ex-husband and mother. *See* Exs. 9, 11-13. Petitioner stresses, in particular, the effect her injury has had on her ability, as a single mother, to be active with her three children (ages 10, 11, and 15) as well as with her three dogs. Ex. 13, pp. 1-2.  Petitioner also indicated that she continued with a home exercise plan after ending physical therapy and that she continues to experience pain, stiffness, and limited range of motion. *Id*. at 2.  Neither party raised any factual disputes in their separate briefs.[4]

---

[3] The undersigned further instructed that any contested facts should be addressed in the parties' separate briefs.

[4] Petitioner reiterated the stipulated facts, adding only a citation to petitioner's affidavit indicating that she continues her home exercise program to the present day. ECF No. 32, pp. 2-5.  Respondent incorporated the parties' stipulated facts by reference without raising any additional facts. ECF No. 33, p. 1.

### III.   Party Contentions

As noted above, the parties filed separate briefs in addition to their joint stipulation of facts.  In her brief, petitioner asserts that she should be awarded $94,950.00, consisting of $90,000.00 in compensation for past pain and suffering and $5,000.00, reduced to a net present value of $4,950.00, in compensation for her future pain and suffering for the next year.[5]  ECF No. 32, pp. 1, 10.  As noted above, she has confirmed that she is not seeking compensation for lost wages or out-of-pocket expenses.  In her brief, petitioner stresses the degree to which her injury impacted her life beyond what is, or would be, reflected in her medical records.  ECF No. 32, pp. 5-10.

Respondent contends, however, that $55,000.00 would constitute reasonable compensation in this case.[6]  ECF No. 33, p. 1. Respondent argues that the medical records reflect only a minimally debilitating injury, requiring only conservative treatment and limited in its duration, and that petitioner's claims of ongoing sequalae are not supported by her medical records.  *Id*. at 3-5.  The undersigned has reviewed the parties' briefs and has considered the parties' arguments regarding the facts of this case and the relevant case law.

### IV.   Discussion

### A.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 15(a)(4).  Petitioner bears the burden of proof with respect to each element of compensation requested.  *Brewer v. Sec'y Health & Human Servs.*, No. 93-92V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).  Medical records are the most reliable evidence regarding a petitioner's medical condition and the effect it has on her daily life.  *Shapiro v. Sec'y Health & Human Servs.*, 101 Fed. Cl. 532, 537-38 (2011) ("[t]here is little doubt that the decisional law in the vaccine area favors medical records created contemporaneously with the events they describe over subsequent recollections.")

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress.  *See I.D. v. Sec'y Health & Human Servs.,* No. 04-1593V, 2013 WL 2448125 at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y Health & Human Servs.*, No. 93-172V, 1996

---

[5] Petitioner cites *Young, infra*, a non-SPU SIRVA case as well as the prior SPU decisions *Desrosier, infra*, and *Marino, infra.*

[6] Respondent cites *H.S. v. Sec'y Health & Human Servs.*, No. 14-1057V, 2014 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 24, 2015), as "some context for pain and suffering awards generally." ECF No. 33, p. 5. However, the undersigned has previously found that the award in *H.S.*, relating to an asymptomatic skull fracture, is not sufficiently analogous to SIRVA injuries to be helpful in resolving a SIRVA case. *See Kim, infra; Young, infra.*  Respondent also cites *Knauss, infra*, and several proffered amounts from prior cases.

WL 300594 at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation").  Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *See I.D.*, 2013 WL 2448125, at *9; *McAllister v. Sec'y Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995).

The undersigned may also look to prior pain and suffering awards to aid in her resolution of the appropriate amount of compensation for pain and suffering this case. *See, e.g. Jane Doe 34 v. Sec'y Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009)(finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case.").  And, of course, the undersigned also may rely on her own experience adjudicating similar claims.[7]  *See Hodges v. Sec'y Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).  Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum.  *See Graves v. Sec'y Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, Judge Merrow rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap.  Judge Merrow noted that this constituted "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590.  Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program.  *Id*. at 595.

### B.  History of SIRVA Settlement and Proffer

SIRVA cases have an extensive history of informal resolution within the SPU.  As of January 1, 2019, 1,023 SIRVA cases have informally resolved[8] within the Special Processing Unit since its inception in July of 2014.[9]  Of those cases, 602 resolved via the government's proffer on award of compensation, following a prior ruling that

---

[7] From July 2014 until September 2015 the SPU was overseen by former Chief Special Master Vowell. Since that time, all SPU cases have remained on the undersigned's docket.

[8] Additionally, 31 claims alleging SIRVA have been dismissed within the SPU.

[9] In *Kim*, *infra*, and *Young, infra*, the undersigned previously described SPU SIRVA case resolutions through July 1, 2018.

petitioner is entitled to compensation.[10]  Additionally, 395 SPU SIRVA cases resolved via stipulated agreement of the parties without a prior ruling on entitlement.

Among the SPU SIRVA cases resolved via government proffer, awards have typically ranged from $77,000.00 to $125,000.00.[11]  The median award is $100,000.00. In most instances, these awards are presented by the parties as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering.

Among SPU SIRVA cases resolved via stipulation, awards have typically ranged from $50,000.00 to $95,000.00.[12]  The median award is $70,000.00.  As with proffered cases, in most instances, stipulated awards are presented by the parties as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering.  Unlike the proffered awards, which purportedly represent full compensation for all of petitioner's damages, stipulated awards also typically represent some degree of litigative risk negotiated by the parties.

### C.  Prior Decisions Addressing SIRVA Damages

In addition to the extensive history of informal resolution, the undersigned has also issued 14 reasoned decisions as of the end of March of 2019 addressing the appropriate amount of compensation in prior SIRVA cases within the SPU.[13]

#### i.      Below-median awards limited to past pain and suffering

In six prior SPU cases, the undersigned has awarded compensation for pain and suffering limited to compensation for actual or past pain and suffering that has fallen below the amount of the median proffer discussed above.  These awards ranged from

---

[10] Additionally, there have been 16 prior cases in which petitioner was found to be entitled to compensation, but where damages were resolved via a stipulated agreement by the parties rather than government proffer.

[11] Typical range refers to cases within the second and third quartiles.  Additional outlier awards also exist. The full range of awards spans from $25,000.00 to $1,845,047.00.  Among the 16 SPU SIRVA cases resolved via stipulation following a finding of entitlement, awards range from $45,000.00 to $1,500,000.00 with a median award of $122,886.42.  For these awards, the second and third quartiles range from $90,000.00 to $160,502.39.

[12] Typical range refers to cases within the second and third quartiles.  Additional outlier awards also exist. The full range of awards spans from $5,000.00 to $509,552.31.  Additionally, two stipulated awards were limited to annuities, the exact amounts of which were not determined at the time of judgment.

[13] An additional case, *Young v. Sec'y Health & Human Servs.*, No. 15-1241, cited by petitioner, was removed from the SPU due to the protracted nature of the damages phase of that case.  In that case the undersigned awarded $100,000.00 in compensation for past pain and suffering and $2,293.15 for past unreimbursable expenses. 2019 WL 664495 (Fed. Cl. Spec. Mstr. Jan. 22, 2019).  A separate reasoned ruling addressed the amount awarded.  2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019).

$60,000.00 to $85,000.00.[14]  These cases have all included injuries with a "good" prognosis, albeit in some instances with some residual pain.  All of these cases had only mild to moderate limitations in range of motion and MRI imaging likewise showed only evidence of mild to moderate pathologies such as tendinosis, bursitis or edema.  The duration of injury ranged from seven to 21 months and, on average, these petitioners saw between 11 and 12 months of pain.

Significant pain was reported in these cases for up to eight months.  However, in most cases, these petitioners subjectively rated their pain as six or below on a ten-point scale.  Only the petitioners in *Kim* and *Attig* reported pain at the upper end of the ten-point scale.  Most of these petitioners pursued physical therapy for two months or less and none had any surgery.  Only two (*Attig* and *Marino*) had cortisone injections.  Several of these cases (*Knauss*, *Marino*, *Kim*, and *Dirksen*) included a delay in seeking treatment.  These delays ranged from about 42 days in *Kim* to over six months in *Marino*.

Two of the petitioners (*Marino* and *Desrosier*) had significant lifestyle factors that contributed to their awards.  In *Marino*, petitioner presented evidence that her SIRVA prevented her from her avid tennis hobby.  In *Desrosier*, petitioner presented evidence that her pregnancy and childbirth prevented her from immediately seeking full treatment of her injury.

### ii.      Above-median awards limited to past pain and suffering

Additionally, in five prior SPU cases, the undersigned has awarded compensation limited to past pain and suffering falling above the median proffered SIRVA award.  These awards have ranged from $110,000.00 to $160,000.00.[15]  Like

---

[14] These cases are:  *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses); *Marino v. Sec'y Health & Human Servs.*, No. 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses); *Attig v. Sec'y Health & Human Servs.,* No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering and $1,386.97 in unreimbursable medical expenses); *Kim v. Sec'y Health & Human Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses); *Desrosiers v. Sec'y Health & Human Servs.*, No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 in past unreimbursable medical expenses); *Dirksen v. Sec'y Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for pain and suffering and $1,784.56 in unreimbursable medical expenses).

[15] These cases are: *Cooper v. Sec'y Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $3,642.33 in unreimbursable medical expenses); *Knudson v. Sec'y Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $305.07 in unreimbursable medical expenses); *Collado v. Sec'y Health & Human Servs.*, No. 17-225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 in unreimbursable medical expenses); *Dobbins v. Sec'y Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 in unreimbursable medical expenses); *Reed v. Sec'y of Health & Human Servs.*, No. 16-

those in the preceding group, prognosis was "good."  However, as compared to those petitioners receiving a below-median award, these cases were characterized either by a longer duration of injury or by the need for surgical repair.  Four out of five underwent some form of shoulder surgery while the fifth (*Cooper*) experienced two full years of pain and suffering, eight months of which were considered significant, while seeking extended conservative treatment.  On the whole, MRI imaging in these cases also showed more significant findings.  In four out of five cases, MRI imaging showed possible evidence of partial tearing.[16]  No MRI study was performed in the *Cooper* case.

During treatment, each of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and all experienced moderate to severe limitations in range of motion.  Moreover, these petitioners tended to seek treatment of their injuries more immediately.  Time to first treatment ranged from five days to 43 days.  Duration of physical therapy ranged from one to 24 months and three out of the five had cortisone injections.

### iii.   Awards including compensation for both past and future pain and suffering

In three prior SPU SIRVA cases, the undersigned has awarded compensation for both past and future pain and suffering.[17]  In two of those cases (*Hooper* and *Binette*), petitioners experienced moderate to severe limitations in range of motion and moderate to severe pain.  The *Hooper* petitioner underwent surgery while in *Binette* petitioner was deemed not a candidate for surgery following an arthrogram.  Despite significant physical therapy (and surgery in *Hooper*), medical opinion indicated that their disability would be permanent. In these two cases, petitioners were awarded above-median awards for actual pain and suffering as well as awards for projected pain and suffering

---

1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering and $4,931.06 in unreimbursable medical expenses).

[16] In *Reed*, MRI showed edema in the infraspintaus tendon of the right shoulder with a possible tendon tear and a small bone bruise of the posterior humeral head.  In *Dobbins*, MRI showed a full-thickness partial tear of the supraspinatus tendon extending to the bursal surface, bursal surface fraying and partial thickness tear of the tendon, tear of the posterior aspects of the inferior glenohumeral ligament, and moderate sized joint effusion with synovitis and possible small loose bodies.  In *Collado*, MRI showed a partial bursal surface tear of the infraspinatus and of the supraspinatus. In *Knudson*, MRI showed mild longitudinally oriented partial-thickness tear of the infraspinatus tendon, mild supraspinatus and infraspinatus tendinopathy, small subcortical cysts and mild subcortical bone marrow edema over the posterior-superior-lateral aspect of the humeral head adjacent to the infraspinatus tendon insertion site, and minimal subacromial-subdeltoid bursitis.

[17] These cases are: *Dhanoa v. Sec'y Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering, $10,000.00 for projected pain and suffering for one year, and $862.15 in past unreimbursable medical expenses); *Binette v. Sec'y Health & Human Servs.*, No. 16-731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $130,000.00 for actual pain and suffering, $1,000.00 per year for a life expectancy of 57 years for projected pain and suffering, and $7,101.98 for past unreimbursable medical expenses); and *Hooper v. Sec'y Health & Human Servs.*, No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $185,000.00 for actual pain and suffering, $1,500.00 per year for a life expectancy of 30 years for projected pain and suffering, $37,921.48 for lost wages).

for the duration of their life expectancies.  In the third case (*Dhanoa*), petitioner's injury was less severe than in *Hooper* or *Binette*; however, petitioner had been actively treating just prior to the case becoming ripe for decision and her medical records reflected that she was still symptomatic despite a good prognosis.  The undersigned awarded an amount below-median for actual pain and suffering, but, in light of the facts and circumstances of the case, also awarded one-year of projected pain and suffering.

### D.  The Appropriate Amount of Compensation in This Case

In this case, petitioner's injury is less severe and of a shorter duration than those injuries which have warranted higher awards for pain and suffering.  Indeed, petitioner's medical history closely aligns with those SIRVA cases described above which have received below-median awards.

Petitioner received her injury-causing vaccination on October 4, 2016.  Ex. 1. She first sought treatment for her shoulder pain approximately two weeks after her vaccination.  Ex. 2, p. 5.  At that time, she described her pain as "9/10 at worst." *Id*. She reported pain with motion and examination revealed mild limitations in range of motion.[18]  She was diagnosed with subacromial bursitis and administered a steroid injection.  *Id*. at 9.  The benefit of the steroid injection wore off after about 15 days and petitioner returned to her physician complaining of discomfort with passive range of motion.  *Id*. at 28.  Thereafter, she attended six physical therapy sessions over the course of one month.  *See, e.g.* Ex. 3, p. 24.

At her initial physical therapy evaluation, she rated her pain as an 8/10.  Ex. 3, p. 10.  However, by the time of her discharge on December 9, 2016, she rated her pain only at 2/10.[19]  *Id*. at 93.  She was released with a home exercise program.  *Id*. Subsequent MRI findings included mild supraspinatus tendinosis, mild degenerative changes, trace joint effusion, and a small amount of fluid in the subcoracoid bursa.  No rotator cuff tear was present.  Ex. 3, pp. 110-11.  Petitioner later attended an additional ten sessions of physical therapy between May and June of 2017 and "was making good progress" at the time she discontinued physical therapy on June 7, 2017.[20]  Her medical records contain no further reference to her shoulder condition.

In total, petitioner experienced eight months of documented pain and suffering; however, her records reflect that her pain improved significantly after about two months.

---

[18] The parties' joint stipulation of facts does not discuss these findings of reduced range of motion. They are located at Ex. 2, p. 8.  For example, forward flexion and abduction were both 160º. *Id*.

[19] In a subsequent orthopedic visit on April 10, 2017, as 5/10 at worst. Ex. 5, p. 2.

[20] The parties' joint stipulation was limited to noting petitioner's good progress at the conclusion of her therapy.  The undersigned further notes, however, that petitioner's discharge summary indicates (by check mark) that she achieved full goal completion. Ex. 2, p. 17.  Nonetheless, individual notations indicate that she still had a 10% level of impairment with regard to changing body positions, carrying and moving objects, and self-care. *Id*.  Her range of motion was listed at 168º flexion, 162º abduction, and 48º extension while her goals were 175º, 165º, and 50º respectively. *Id*. at 3.

She experienced only mildly reduced range of motion and her MRI findings suggest only a mild condition.  In her affidavit, petitioner described additional ongoing sequela, including an ongoing impact on her family life, but these reports are not fully reflected in her medical records.[21]

The above-described course of petitioner's condition is very similar to the prior *Kim*, *Marino*, and *Attig* cases, all of which were awarded damages below the median award for proffered SIRVA cases.  In those cases, petitioners experienced from seven to 15 total months of pain and suffering.  Moreover, like this case, the *Kim* and *Attig* petitioners reported one to three months of significant pain.  All four cases included MRI findings consistent with a mild injury.  Like this petitioner, *Marino* and *Attig* each had a cortisone injection and both *Kim* and *Attig* attended between 10 to 20 sessions of physical therapy over the course of one to two months.  Also like this case, the *Kim* petitioner averred that her injury impacted her family life beyond what was reflected in her medical records.  In all four cases, petitioners had a good prognosis.  Contrary to petitioner's assertion, the *Young* case is inapposite.  In that case, petitioner suffered a moderate to severe injury requiring prolonged physical therapy.  2019 WL 396981, at *6.

In light of all of the above, and based on the record as a whole, the undersigned finds that $75,000.00 in compensation for past pain and suffering is reasonable and appropriate.  The undersigned does not find sufficient evidence to support any award of future pain and suffering.

## V.      Conclusion

For all the foregoing reasons, the undersigned awards **petitioner a lump sum payment of $75,000.00, representing compensation for petitioner's past pain and suffering, in the form of a check payable to petitioner, Keri Anne Bordelon.**  This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[22]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[21] Although petitioner indicated that she ended her physical therapy prematurely due to work and family obligations and not due to her improvement, she acknowledged that she only missed two further sessions and continued with her home exercise plan. Ex. 13, p. 3.  Moreover, her prognosis was good at the time and she did not subsequently return for any further care.

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

| | |
|---|---|
| **KERI ANNE BORDELON,** | |
| Petitioner, | |
| v. | **Docket No.:  1:17-vv-01892** |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | **Chief Special Master: Nora Beth Dorsey** |
| Respondent. | |

**JOINT STATEMENT OF STIPULATED FACTS**

Petitioner received the influenza vaccine in her right deltoid on October 4, 2016 at West Gate Family Medicine, located at 2266 Albert Pike Rd, Hot Springs, AR 71913. (See Exhibit "1", pp.1-2).

On October 19, 2016, Petitioner presented to Dr. Justin Walden of CHI St. Vincent with "complaints of pain in her right shoulder," which "began [on] October 4, 2016 after getting her flu shot." Petitioner described "the pain as sharp and stabbing," 9/10 at worst, and reported "pain with any motion away from her body and difficulty lifting objects secondary to the pain." Petitioner further reported pain with daily life activities when "folding clothes, driving, and putting on/taking off [clothes]," and that she had utilized ibuprofen which "provided minimal relief." (See Exhibit 2, pp. 2, 5, & 10-11). Examination of Petitioner's right shoulder revealed "tenderness to palpation." (See Exhibit 2, pp. 8). On October 19, 2016, Petitioner underwent a right shoulder x-ray which was unremarkable. (See Exhibit 2, pp. 9). Dr. Walden diagnosed Petitioner with right shoulder subacromial bursitis, administered a steroid injection in her right shoulder. (See Exhibit 2, pp. 20)

On November 7, 2016, Petitioner returned to Dr. Justin Walden with complaints of ongoing right shoulder pain, which "was gone for 15 days following injection but now has returned." Examination of Petitioner's right shoulder revealed "discomfort with passive range of motion." Dr. Walden diagnosed with subacromial bursitis versus very early adhesive capsulitis, and prescribed "physical therapy to work on shoulder range of motion" and strengthening, and "NSAIDs for inflammation." (See Exhibit 2, pp. 28-29).

On November 11, 2016, Petitioner presented to CHI St. Vincent Hospital Hot Springs for an initial physical therapy evaluation with complaints of "sharp" right shoulder pain 8/10 at worst, "pain lifting her shoulder," and "difficulty lifting her arm." (See Exhibit 3, pp. 10). From November 11, 2016 through December 9, 2016, Petitioner presented for a total of six (6) physical therapy sessions through December 9, 2016, before being discharged on a home exercise program. On December 9, 2016, Petitioner reported ongoing right shoulder pain, rated 2/10 and increased pain with the throwing of a ball (See Exhibit 3, pp. 10, 24, 93-94).

On December 22, 2016, Petitioner underwent a right shoulder MRI which revealed "mild supraspinatus tendinosis, mild degenerative changes along the AC and glenohumeral joints, and trace joint effusion and small amount of fluid in the subcoracoid bursa." (See Exhibit 4, pp.16). On December 28, 2016, Petitioner returned to Dr. Justin Walden with complaints of ongoing right shoulder pain with noted improvement, "tightness in the shoulder and pain with movement away from her body." Dr. Walden diagnosed Petitioner with "right shoulder subacromial bursitis and potential early adhesive capsulitis," and recommended she continue with her home exercise program. (See Exhibit 2, pp. 41-42).

On April 10, 2017, Petitioner presented to Janice Suite, APRN of National Park

Physician Services, Orthopedic Center of Hot Spring with complaints of "aching, dull" right shoulder pain after getting [the] flu shot" with an onset of October 4, 2016, which is aggravated by "lifting, carrying, twisting, range of motion, and weight-bearing. Petitioner further reported right shoulder "weakness." Upon examination, Janice Suite diagnosed Petitioner with right shoulder pain and injury of axillary nerve. (See Exhibit 5, pp.1-3).

On May 3, 2017, Petitioner presented to Tri Lakes Physical Therapy for a physical therapy evaluation, with complaints of right shoulder pain. Petitioner reported the following physical limitations as a result of her right shoulder injury, "sleep deficits, caring for home - cleaning, cooking, laundry, reaching a shelf-especially up high, dressing, bathing, washing/styling hair." (See Exhibit 4, pp. 4-7). Petitioner presented for a total of ten (10) physical therapy sessions from May 3, 2017 through June 2, 2017, before she was discharged with a diagnosis of right shoulder pain and loss of function, mild supraspinatus tendinosis, mild DJD, and subcoracoid bursa fluid. (See Exhibit 4, pp. 1-3, & 5-17). A PT discharge note dated July 18, 2017, indicates that, following ten sessions, petitioner "was making good progress with physical therapy treatment," but on June 7, 2017, had called to inform them that she was "unable to continue physical therapy at this time." (See Exhibit 4, pp. 2).

On May 18, 2017, petitioner was seen by Kay Harris, NP, at West Gate Family Medicine for a cough.   A musculoskeletal review of systems was negative for "arthralgias, back and myalgias," and right shoulder pain was not mentioned.  (See Exhibit 6, pp. 18).  On June 19, 2017, petitioner was seen by Amy Reeves, M.D., at West Gate Family Medicine for a physical, again with no mention of right shoulder pain.  (See Exhibit 6, pp. 22-23).

Respondent has reviewed this joint statement and agrees with its contents.

Respectfully submitted,


/s/ *Shealene Mancuso*
Shealene Mancuso, Esquire
Attorney for Petitioner
MULLER BRAZIL, LLP
715 Twining Road, Suite 208
Dresher, PA 19025
(215) 885-1655

Date: March 14, 2019